UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

US CLAIMS,

              Plaintiff,

     v.

HORACE RUBLE BAKER, IV, et al.,

              Defendants.

Civil No. 12-2231 (NLH/AMD)

**OPINION**

**APPEARANCES:**

Rudolph V. De George II, Esquire
Law Offices of Rudolph V. De George II
1221 N. Church Street
Suite 103
Moorestown, New Jersey 08057
    *On behalf of Plaintiff US Claims*

Jonathan Peter Vuotto, Esquire
Riker, Danzig, Scherer, Hyland & Perretti, LLP
Headquarters Plaza
One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962
    *On behalf of Defendants Horace Ruble Baker, IV,*
    *Warner R. Wilson, Jr., and Wilson & Epstein, LLC*

**HILLMAN, District Judge**

    This matter comes before the Court by way of Defendants

Warner R. Wilson, Jr. and Wilson and Epstein, LLC's motion [Doc.

No. 4] to dismiss Plaintiff's complaint as to these Defendants

pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of

personal jurisdiction.  The Court has considered the parties'

submissions and decides this matter pursuant to Federal Rule of

Civil Procedure 78.

For the reasons expressed below, Defendants' motion to

dismiss for lack of personal jurisdiction is denied.

I.   **JURISDICTION**

The Court exercises jurisdiction over this matter pursuant

to 28 U.S.C. § 1332 based on complete diversity of citizenship

between the parties and an amount in controversy in excess of

$75,000.  Plaintiff brings this action against Defendants Horace

Ruble Baker ("Baker"), Warner R. Wilson, Jr., ("Wilson"), and

Wilson and Epstein, LLC, ("W&E").[1]  Plaintiff US Claims is a

---

1.   The jurisdictional allegations in Plaintiffs' amended
complaint are insufficient to establish the citizenship of the
parties in this matter, and such insufficiency would ordinarily
result in the issuance of an Order to Show Cause as to why this
case should not be dismissed for lack of subject matter
jurisdiction.  However, the Court previously issued two Orders to
Show Cause [Doc. Nos. 5, 9] in a related action, Cambridge
Management Group, LLC v. Horace Ruble Baker IV, et al., 1:12-cv-
03577 (NLH/AMD) (hereinafter, "the Cambridge action"), in an
attempt to determine the citizenship of the respective parties in
these two suits.  In the Cambridge action, Cambridge Management
Group, LLC brings suit against the same Defendants that US Claims
is suing in the present action – Baker, Wilson, and W&E, in
addition to suing Baker's wife, Sheila Baker, and the Plaintiff
in this action, US Claims.
    In response to the Orders to Show Cause in the Cambridge
action, Baker, his wife, Wilson, and W&E filed an amended notice
of removal [Doc. No. 10] establishing the citizenship of US
Claims, Baker, Wilson, and W&E.  The Court thereafter allowed the
Cambridge action to proceed after finding subject matter
jurisdiction was proper because complete diversity existed
between the parties.  Accordingly, having reviewed the
citizenship averments made by Baker, Wilson, and W&E in the
Cambridge action, the Court will take judicial notice of those
pleadings and is satisfied that the exercise of subject matter

citizen of the state of Pennsylvania because it is a limited liability company with two members, both of whom are citizens of the state of Pennsylvania. (See Second Am. Notice of Removal, [Doc. No. 10 in the Cambridge action] ¶ 11; see also Exs. B & C to Second Am. Notice of Removal in the Cambridge action.) Defendant Baker is a citizen of the state of Montana.  (See Second Am. Notice of Removal, [Doc. No. 10 in the Cambridge action] ¶ 12.)  Defendant Wilson is a citizen of the state of Georgia.  (See id. ¶ 13.)  Defendant W&E is also a citizen of the state of Georgia because it is a limited liability company with two members, each of whom are citizens of the state of Georgia. (See id. ¶ 13.)  Therefore, complete diversity of citizenship exists between the parties.  The amount in controversy is also met because the allegations contained in Plaintiff's amended complaint sufficiently demonstrate that the damages sought in this action are in excess of $75,000 exclusive of interest and costs.

## II.  **BACKGROUND**

By way of background,[2] US Claims is "a financial enterprise

---

jurisdiction in the present action is proper based on complete diversity of citizenship.  Nonetheless, Plaintiff is directed to file an amended complaint in this matter within 20 days of the filing of this Opinion affirmatively alleging the citizenship of each of the parties.

2.  The Court sets forth herein only those facts alleged in the amended complaint which are relevant to the resolution of the pending motion to dismiss for lack of personal jurisdiction.

which, inter alia, purchases portions of claimant's anticipated proceeds in pending litigation claims."[3] (Am. Compl. [Doc. No. 17] ¶ 2.) As alleged in the complaint, Defendant Baker was the plaintiff in an underlying personal injury action brought in Fulton County, Georgia ("the underlying Georgia action") filed as a result of a work related injury that occurred in January of 2006. (Id. ¶¶ 5-6.) Defendant Baker retained Defendants Wilson and W&E (collectively, "the Wilson Defendants") to represent Baker in the underlying Georgia action. (Id. ¶ 5.)

Plaintiff US Claims alleges that on approximately November 29, 2007,[4] Defendant Baker and Plaintiff US Claims entered into a Purchase Agreement whereby Baker conveyed to US Claims an interest in his portion of the proceeds resulting from his personal injury claim in the underlying Georgia action. (Id. ¶ 7; see also Purchase Agreement, Ex. A to Am. Compl.) Specifically, pursuant to the Purchase Agreement, Plaintiff US Claims paid Defendant Baker $36,250.00, including $6,250.00 for

---

3. Financial enterprises such as US Claims are commonly referred to as litigation funding companies. "Litigation funding" is considered a "relatively new field" wherein "a lender provides funds to a plaintiff in planned or pending litigation, or [provides funds to] the plaintiff's attorney" in exchange for purchasing a interest in any potential recovery. Robin Miller, Annotation, Enforcement and Validity of Litigation Funding Agreements, 72 A.L.R. 6th 385 (2012).

4. While the amended complaint sets forth November 29, 2007 as the date the parties entered into the Purchase Agreement, Defendant Baker signed the Purchase Agreement on November 30, 2007. (See Purchase Agreement, Ex. A to Am. Compl., 6.)

fees and costs.  (Id. ¶ 8; see also Purchase Agreement, Ex. A to Am. Compl., ¶ 1a.)  In exchange for this payment, US Claims purchased a $39,070.00 interest in the proceeds of Defendant Baker's underlying personal injury claim.  (Am. Compl. ¶ 8; see also Purchase Agreement, Ex. A to Am. Compl., ¶ 1a.)  Plaintiff's interest in Defendant Baker's underlying claim also included an annual percentage fee, compounded monthly, as specified by a Disclosure Table attached as Exhibit "B" to the Purchase Agreement and specifically referenced in the Purchase Agreement itself.  (Am. Compl. ¶ 8; see also Purchase Agreement, Ex. A to Am. Compl., ¶ 1b.)

On November 30, 2007, Defendant Baker also signed Exhibit "A" to the Purchase Agreement, a document entitled "Authorization for Attorney to Pay US Claims from Proceeds of Claim/Acknowledgment of Authorization" (hereinafter, "A/AOA"). (See A/AOA, Ex. "A" to Purchase Agreement, 7.)  The top portion of the A/AOA is designated as an "Authorization" and was signed by Defendant Baker.  (Id.)  The bottom portion of the A/AOA is designated as an "Acknowledgment of Authorization" and was signed by Defendant Wilson individually and on behalf of Defendant W&E. Pursuant to the terms of the Purchase Agreement and the A/AOA, Defendants Baker, Wilson, and W&E agreed to pay US Claims the proceeds from any verdict, award or other settlement resulting from the underlying Georgia action prior to making any payment to

Defendant Baker.  (See Purchase Agreement, Ex. A to Am. Compl., ¶ 1c; see also A/AOA, Ex. "A" to Purchase Agreement, 7 ("In particular, [Wilson and W&E] agree to pay [US Claims] its Interest from [Baker's] Proceeds of the Claim in accordance with the Disclosure Table set forth in Exhibit "B" of the [Purchase] Agreement, ... [Wilson and W&E] further agree not to distribute any Proceeds of the Claim to [Baker] until [US Claims] has been paid its Interest in full."))

    Plaintiff US Claims alleges that after the execution of these documents, the Wilson Defendants engaged in settlement negotiations which resulted in the settlement of Baker's underlying Georgia action in the amount of $700,000.00.  (Am. Comp. ¶ 16.)  The Wilson Defendants informed Plaintiff US Claims of the settlement on March 3, 2011, and the settlement proceeds were received on that date and deposited into the attorney trust account maintained by the Wilson Defendants for Defendant Baker. (Id. ¶¶ 16, 17.)  According to the Disclosure Table set forth in Exhibit "B" to the Purchase Agreement, Plaintiff US Claims was owed a total of $95,039.00 as of March 3, 2011 – the date when the underlying George action settled.  (Id. ¶ 16; see also Disclosure Table, Ex. "B" to Purchase Agreement, 8.)

    Plaintiff US Claims alleges that as of the date of the amended complaint, "Baker and/or the Wilson defendants have failed to satisfy US Claims' Interest in the proceeds of

[Baker's] claim" in the amount of $95,039.00 and that this failure constitutes a default under the terms of the Purchase Agreement.  (Am. Compl. ¶¶ 18, 19.)  Based on these allegations, Plaintiff US Claims brings causes of action against Defendant Baker for breach of contract, conversion, unjust enrichment, and fraud.  (Id. ¶¶ 21-36.)  Plaintiff US Claims also asserts causes of action against the Wilson Defendants for breach of contract, conversion, unjust enrichment, fraud, and breach of fiduciary duty.  (Id. ¶¶ 37-55.)

## III. **DISCUSSION**

In the present motion, the Wilson Defendants seek to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.[5]  (Mem. of Law in Supp. of Mot. to Dismiss Comp. as to the Wilson Defendants for Lack of Personal Jurisdiction [Doc. No. 4-1] (hereinafter, "Defs.' Mem.") 1.)  The Wilson Defendants' primary argument is that the Wilson Defendants "lack the requisite 'minimum contacts'

---

5.  Initially, the Wilson Defendants moved to dismiss Plaintiff's original complaint [Doc. No. 1] on April 26, 2012.  Subsequently, Plaintiff sought leave to file an amended complaint on August 13, 2012.  (See Mot. to Amend [Doc. No. 14].)  Defendants did not oppose Plaintiff's motion to amend, but specifically "reserve[d] all of their rights with respect to the proposed amended allegations."  (Letter from Jonathan P. Vuotto, Esquire [Doc. No. 15] 1, Sept. 3, 2012.)  The Wilson Defendants further requested that their pending motion to dismiss "be pressed against Plaintiff's amended complaint" because the amended complaint did not include any new allegations effecting the motion.  (Id.)  Accordingly, the Court construes the Wilson Defendants' motion against Plaintiff's amended complaint.

with New Jersey for this Court to exercise jurisdiction over them." (Defs.' Mem. 1.)

Plaintiff US Claims opposes the Wilson Defendants' motion and argues that all Defendants in this action, including the Wilson Defendants, are subject to the exercise of personal jurisdiction by this Court based on Paragraph 7 of the Purchase Agreement, a paragraph entitled "Applicable Law." (Pl.'s Mem. of Law in Resp. to the Wilson Defendants' Mot. to Dismiss the Compl. for Lack of Personal Jurisdiction [Doc. No. 6] (hereinafter, "Pl.'s Opp'n"), 8.) Alternatively, Plaintiff US Claims contends that sufficient minimum contacts exist between the state of New Jersey and the Wilson Defendants such that the exercise of personal jurisdiction is proper. (Pl.'s Opp'n 11.)

**A.   Standard of Review**

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant. "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)). In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret Sav. Bank v. Shushan, 954 F.2d

8

141, 142 n.1 (3d Cir.), <u>cert.</u> <u>denied</u>, 506 U.S. 817 (1992)

(citations omitted).[6]

**IV.   <u>ANALYSIS</u>**

In opposing the Wilson Defendants' motion, Plaintiff's

primary argument relies on Paragraph 7 of the Purchase Agreement.

Paragraph 7 contains both a choice-of-law clause and a forum

selection clause.   The forum selection clause at issue consents

exclusively to personal jurisdiction and venue in the state or

federal courts of New Jersey.   Paragraph 7 provides in pertinent

part:

> This Agreement shall be governed, construed and
> enforced in accordance with the internal laws of
> the State of New Jersey, without regard to the
> conflict of law rules of New Jersey or any other
> jurisdiction.   Any dispute arising under or
> related to this Agreement, or concerning the
> construction, interpretation or effect of this
> Agreement or any claims under this Agreement, or
> the rights or liability of [Baker] or [US Claims]
> shall be determined by judicial proceeding in the
> state or federal courts having original

---

6.   There is a "significant procedural distinction" between a
motion pursuant to Rule 12(b)(2) and a motion pursuant to Rule
12(b)(6).   <u>Time Share Vacation Club v. Atlantic Resorts, Ltd.</u>,
735 F.2d 61, 66 n.9 (3d Cir. 1984).   "A Rule 12(b)(2) motion ...
is inherently a matter which requires resolution of factual
issues outside the pleadings, i.e. whether in personam
jurisdiction actually lies.   Once the defense has been raised,
then the plaintiff must sustain its burden of proof in
establishing jurisdictional facts through sworn affidavits or
other competent evidence.   . . . [A]t no point may a plaintiff
rely on the bare pleadings alone in order to withstand a
defendant's Rule 12(b)(2) motion to dismiss for lack of in
personam jurisdiction.   Once the motion is made, plaintiff must
respond with actual proofs, not mere allegations."   <u>Id.</u> (citation
omitted).

jurisdiction over actions arising in Moorestown,
New Jersey.  Further, upon an Event of Default or
in the event of a threatened violation by [Baker]
of this Agreement, [US Claims] in addition to but
not in limitation of any other rights, remedies or
damages available to [US Claims], at law or
equity, shall be entitled to equitable relief as
may be appropriate, including an order for
specific performance. [US Claims] and [Baker]
hereby irrevocably submit to the exclusive
personal jurisdiction of the state and federal
courts having original jurisdiction over actions
arising in Moorestown, New Jersey and we each
waive all questions of personal jurisdiction and
venue for purposes of the provisions of this
Paragraph 7.

(Purchase Agreement, Ex. A to Am. Compl., ¶ 7.)

Plaintiff contends that the contract here was signed by US
Claims, Baker, and the Wilson Defendants and consists of the
following documents: (1) the Purchase Agreement itself; (2)
Exhibit "A" to the Purchase Agreement — the A/AOA; (3) Exhibit
"B" to the Purchase Agreement — the Disclosure Table; (4) Exhibit
"C" to the Purchase Agreement — a list of all prior sales,
transfers, assignments or conveyances of any interest in the
underlying Georgia action; and (5) a US Claims Funding
Instruction Sheet.  (Pl.'s Opp'n 8.)  According to Plaintiff,
"[a]ll of these documents constitute the 'Contract'."  (Id.)
Therefore, Plaintiff argues, when the Wilson Defendants signed
Exhibit "A" to the Purchase Agreement — the A/AOA — the Wilson
Defendants "consented to jurisdiction of the New Jersey Courts to
determine the issues related to the" Purchase Agreement pursuant
to the forum selection clause in Paragraph 7.  (Id. at 8-9.)

10

The Wilson Defendants disagree and argue that they "executed only the Acknowledgment of [] Baker's authorization to disburse funds to [US Claims] ... [and] did not agree to any of the other provisions of the [Purchase Agreement] between [US Claims] and [] Baker." (Defs.' Mem. 5.)  The Wilson Defendants construe Paragraph 7 to mean that only US Claims and Baker submitted to the exclusive personal jurisdiction of New Jersey state and federal courts, essentially arguing that Baker and US Claims are the only parties to the Purchase Agreement.  (Id.)  They argue that because the Wilson Defendants "neither signed the main agreement nor initialed the page containing the jurisdictional provisions, as did [] Baker[,]" the Wilson Defendants could not have reasonably anticipated being haled into court in New Jersey based on the agreement between US Claims and Baker.  (Id.)

As the Supreme Court has recognized, the requirement that a court have personal jurisdiction over a defendant is an individual right which "can, like other such rights, be waived." Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982).  "A forum selection clause in a contract is one way in which to effectuate this waiver." Travelodge Hotels, Inc. v. Mangat Houston Race Track, LLC, No. 2:06-cv-03543-JAG, 2007 WL 2156367, at *3 (D.N.J. July 25, 2007) (citing Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315 (1963)).

11

"In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law.  Because [q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature, federal law applies in diversity cases irrespective of <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938)."[7]  <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 877 (3d Cir. 1995) (internal citations and quotations omitted).  Under federal law, a forum selection clause is presumptively valid unless the party objecting to it can show that enforcement of the clause would be unreasonable under the circumstances.  <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10 (1972).

As explained by the Third Circuit, a party may demonstrate that a forum selection clause is unreasonable and unenforceable by showing:

> (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

<u>Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.</u>, 709 F.2d 190,

---

7.  Therefore, to the extent the Wilson Defendants rely on New Jersey case law regarding the enforcement of forum selection clauses in seeking to dismiss Plaintiff's amended complaint, such reliance is misplaced.

201 (3d Cir. 1983), <u>cert. denied</u>, 464 U.S. 938 (1983), <u>overruled on other grounds</u>, <u>Lauro Lines S.R.L. v. Chasser</u>, 490 U.S. 495 (1989).

Here, the Wilson Defendants argue, without citation, that it "is axiomatic that the party sought to be charged with a forum-selection clause must actually agree to be bound by that provision." (Reply Mem. of Law in Further Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction [Doc. No. 11] (hereinafter, "Defs.' Reply"), 2.) Contrary to this assertion, other federal courts have recognized that "'a range of transaction participants, parties and *non-parties*, should benefit from *and be subject to* forum selection clauses.'" <u>Manetti-Farrow, Inc. v. Gucci America, Inc.</u>, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (quoting <u>Clinton v. Janger</u>, 583 F. Supp. 284, 290 (N.D. Ill. 1984) (citing <u>Coastal Steel Corp.</u>, 709 F.2d at 202-03)) (emphasis added).

Several courts in this District have similarly recognized that "where a third party's conduct is 'closely related to the contractual relationship,' the forum selection clause applies to the third party." <u>Affiliated Mortg. Protection, LLC v. Tareen</u>, No. 06-4908, 2007 WL 203947, at *4 (D.N.J. Jan. 24, 2007);[8] <u>see</u>

---

[8]<u>See also</u> <u>Four River Exploration, LLC v. Bird Resources, Inc.</u>, No. 09-3158, 2010 WL 216369, at *3 (D.N.J. Jan. 15, 2010) ("Courts in this district have consistently held that non-signatory third-parties who are 'closely related to [a] contractual relationship' are bound by forum selection clauses

also <u>Demodulation, Inc. v. Applied DNA Sciences, Inc.</u>, No. 11-
0296, 2011 WL 6756069, at *2-3 (D.N.J. Dec. 22, 2011) (concluding
that forum selection clause contained in confidentiality
agreement executed by plaintiff and only one of several
defendants logically tied together plaintiff's claims against all
defendants particularly where plaintiff's claims were
"inextricably intertwined"); <u>Foley & Lewis Racing, Inc. v.
Burling</u>, No. 07-972, 2008 WL 544655, 3 (D.N.J. Feb. 27, 2008)
(finding company CEO who signed an agreement only on behalf of
the company itself was closely related to the contractual
relationship therefore had standing to enforce the agreement's
forum selection clause on his own behalf because the CEO signed
the agreement in his capacity as company CEO and derived benefit
from the agreement); <u>Druckers', Inc. v. Pioneer Elecs. (USA),
Inc.</u>, No. 93-1931, 1993 WL 431162, *7-8 (D.N.J. Oct. 20, 1993)
(explaining that a non-signatory plaintiff was subject to a forum
selection clause in the contract executed by his company with
regard to a claim that defendant's tortious conduct caused the
company to default on a debt thereby resulting in satisfaction
against the non-signatory plaintiff as personal guarantor);
<u>Cinema Laser Technology, Inc. v. Hampson</u>, No. 91-1018, 1991 WL
90913, at *3 (D.N.J. May 30, 1991) (concluding that individuals

---

contained in the contracts underlying the relevant contractual
relationships.")

who did not sign a joint venture agreement were still subject to the agreement's forum selection clause where their relationship to the company — the signatory — made litigation in another forum foreseeable).

Here, the alleged conduct of the Wilson Defendants of which Plaintiff US Claims complains is closely, and even directly, related to the contractual relationship between Defendant Baker and US Claims, as set forth in both the Purchase Agreement, the A/AOA, and the Disclosure Table.  The Wilson Defendants are alleged to have breached their obligation to pay Plaintiff pursuant to the terms of the Purchase Agreement, the A/AOA, and the Disclosure Table.  Additionally, rather than pay Plaintiff's interest from the proceeds of settlement in the underlying Georgia action, the Wilson Defendants purportedly retained the funds for their personal use.  Furthermore, the Wilson Defendants allegedly participated in the fraudulent representations which Plaintiff relied upon prior to agreeing to distribute funds to Defendant Baker – including representations by the Wilson Defendants that Plaintiff US Claims would be paid in full before any payment to Defendant Baker.

Moreover, the Purchase Agreement itself names the Wilson Defendants as Defendant Baker's "Attorney" with respect to the underlying claim.  (Purchase Agreement, Ex. A to Am. Compl., ¶ A.)  The Purchase Agreement goes on to specify that Plaintiff US

Claims' interest would be paid to Plaintiff by Defendant Baker's Attorney, i.e., the Wilson Defendants, and that the Wilson Defendants were directed by Defendant Baker to notify Plaintiff of any verdict, award, or settlement and to pay Plaintiff its interest prior to any payment to Defendant Baker.  (Purchase Agreement, Ex. A to Am. Compl., ¶ 1c.)  No only does the Purchase Agreement specifically make reference to Exhibit "A" — the A/AOA executed by the Wilson Defendants, (see id.), but the Agreement also explicitly defines "[t]he failure by [Baker] or **[Baker's] Attorney** to pay USC's Interest in the Proceeds within thirty (30) days after (i) there is a verdict, award or other settlement ... and (ii) Proceeds are received by [Baker] or [Baker's] Attorney" as an "Event of Default" under the Agreement.  (Id. ¶ 6a) (emphasis added).  Significantly, the Purchase Agreement further provides that "[t]his Agreement *and its exhibits* make up the entire and only agreement or understanding between [US Claims and Baker]."  (Id. ¶ 10) (emphasis added).

Pursuant to the express terms of the A/AOA, the Wilson Defendants also acknowledged that they represented Defendant Baker as his attorney, "in connection with the Claim described in that certain Purchase Agreement dated November 29, 2007, between [Baker] and US Claims ..." and further acknowledged that Defendant Baker had "irrevocably instructed [the Wilson Defendants] to *comply with its [i.e., the Purchase Agreement's]*

16

*terms* pursuant to the Authorization set forth above[.]"   (See A/AOA, Ex. "A" to Purchase Agreement, 7) (emphasis added).   The terms of the Agreement expressly required the payment of US Claims' interest pursuant to the Purchase Agreement and the Disclosure Table set forth in Exhibit "B" be made by the Wilson Defendants.   (Id.)   Additionally, the Disclosure Table set forth in Exhibit "B", which the Wilson Defendants explicitly agreed to comply with in making payment to US Claims, unmistakably incorporates by reference the terms and conditions set forth in the Purchase Agreement, including the forum selection clause contained therein. (See Disclosure Table, Ex. "B" to Purchase Agreement, 8.)

Under these circumstances, the fact that the Wilson Defendants did not sign the Purchase Agreement itself (or initial the page setting forth the forum selection clause) does not render the forum selection clause unenforceable against them. The transaction between Plaintiff US Claims and Defendant Baker, clearly and explicitly, required direct involvement by the Wilson Defendants to ensure payment of US Claims' interest in Defendant Baker's underlying Georgia action.   The Purchase Agreement patently named the Wilson Defendants, repeatedly authorized them to pay US Claims' interest, and defined the Wilson Defendants' failure to do so an event of default.   The Purchase Agreement and all of the Exhibits attached thereto became part of the

17

transaction and together constituted the entire agreement between the parties.

Moreover, the Wilson Defendants, in signing the A/AOA, expressly agreed to comply with the terms of the Purchase Agreement and to ensure that US Claims was paid its interest from the underlying settlement proceeds in accordance with the Disclosure Table set forth in Exhibit "B".  This Disclosure Table at Exhibit "B" undisputedly incorporates by reference the terms of the Purchase Agreement, including the forum selection clause. Therefore, the Wilson Defendants' contention that the forum selection clause was not presented to them – as the parties to be bound – in a fair and forthright fashion because it was not set forth directly in the A/AOA itself is unavailing.

Here, Plaintiff's amended complaint alleges that the Wilson Defendants' failed to pay US Claims pursuant to the Purchase Agreement, the A/AOA, and the Disclosure Table.  As set forth above, it is clear that the Wilson Defendants' conduct is so closely related to the contractual relationship between Defendant Baker and US Claims that the forum selection clause contained in the underlying contract documents is applicable to the Wilson Defendants.  See Affiliated Mortg. Protection, 2007 WL 203947, at *4; see also Manetti-Farrow, Inc., 858 F.2d at 514 n.5. Accordingly, pursuant to the forum selection clause set forth in Paragraph 7 of the Purchase Agreement, the Wilson Defendants have

consented to the exclusive personal jurisdiction of the state and
federal courts of New Jersey, and this Court may properly
exercise jurisdiction over them.[9]  Cf. Drucker's, Inc.,1993 WL
431162, at *8 ("To find otherwise, the Court 'would permit [a
plaintiff] to sidestep a valid forum selection clause simply by
naming [as a defendant] a closely related party who did not sign
the clause[.]")

**V.   CONCLUSION**

For the foregoing reasons, the Wilson Defendants' motion to
dismiss for lack of personal jurisdiction is denied.  An Order
consistent with this Opinion will be entered.


Dated: December 27, 2012          /s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

---

9.  Having determined that the Wilson Defendants are bound by the
forum selection clause, the Court need not assess Defendants'
arguments regarding whether the sufficient minimum contacts
exists between the Wilson Defendants and the state of New Jersey.